## HAM *et al. v.* HAM *et al.**

(Division A.   Dec. 13, 1926.)

[110 So. 583.   No. 26048.]

1. DEEDS.  *Fiduciary relation in fact between parties to deed sought to be set aside held shown, making prima facie case of fraud.*
   Evidence in suit to set aside deed *held* to show, between the parties to the deed, who were partners and brothers, a fiduciary relation in fact, making deed *prima facie* fraudulent.

2. DEEDS.  *Conveyances between parties to fiduciary relation, whether it be in fact or conventional, are governed by same rules as to presumption of fraud.*
   Rules governing deeds between parties to a fiduciary relation in fact are the same as those where the parties occupy a conventional fiduciary relation, as to presumption of fraud.

3. DEEDS.  *Fiduciary relation between parties to deed raises presumption of invalidity.*
   There is a presumption of invalidity of deed between parties to fiduciary relation, requiring evidence of full knowledge and independent consent and action.
   146  Miss.—11.

4. DEEDS. *Party claiming under deed between parties to fiduciary relation has burden of overcoming presumption of invalidity.*

Burden of overcoming presumption of invalidity of deed between parties to fiduciary relation is on party claiming under it.

5. DEEDS. *Full knowledge and independent consent and action of grantor in deed to one in confidential relation held not shown by the evidence.*

Evidence in suit to set aside deed between parties in confidential relation *held* not to show grantor at time of its execution had full knowledge of property's value or of its relation thereto of the consideration, or that it was executed of his own independent consent and action.

6. DEEDS. *Independent consent and action of grantor in deed to one in confidential relation is provable by showing he acted on advice of competent person disconnected from grantee.*

The usual if not the only way of proving independent consent and action of grantor in deed to one in confidential relation with him is by showing that in making deed he acted on advice of competent person disconnected from grantee, and devoted wholly to grantor's interest.

---

*Corpus Juris-Cyc. References: Deeds, 18CJ, p. 231, n. 91; p. 232, n. 2; p. 422, n. 95; p. 423, n. 97; p. 427, n. 51, 54; p. 447, n. 46. Burden on party claiming fraud to establish it, see 12 R. C. L. 424; 2 R. C. L. Supp. 1427; 5 R. C. L. Supp. 644; 6 R. C. L. Supp. 707.

APPEAL from chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by J. L. Ham and others against Eugene Ham and others. From an adverse decree, complainants appeal. Reversed and remanded.

*Shands, Elmore & Causey* and *Boddie & Farish,* for appellants.

The conveyance should have been cancelled. There is a clear showing by the evidence that at the time of the conveyance a confidential relation existed as a fact and also as a matter of law. Consider the "single circumstance" of a confidential relation. 2 Pomeroy's Eq. Juris., paragraphs 955-56. To instance a few cases in

which the courts have held that a confidential relation existed *as a fact,* see *Hutcheson* v. *Bibb et al.,* (Ala.), 38 So. 754; *Irwin* v. *Sample* (Ill.), 72 S. E. 689.; *Spiva et al.* v. *Byrd* (Ala.), 90 So. 289.

The confidential relation in the above cases, it seems, may be said to have been shown to exist as a fact without reference to any of those conventional relations from which it is conclusively inferred as a matter of law. Some relations from their inherent nature are held. and termed by the law as confidential or fiduciary relations. One of these relations is the relation between partners. Referring to that characteristic of the partnership, see *Goldsmith* v. *Eichold* (Ala.), 10 So. 81.

It is usually held that the mere fact that two parties are brothers is not sufficient to show *prima facie* a confidential relation, but see *Salhinger* v. *Salhinger,* (Wash.), 105 Pac. 237; 22 Am. & Eng. Ency. of Law 114; 3 Pomeroy's Eq. Juris., par. 1088.

In the present case there exists as a matter of law the element of confidence and trust. But there is much more than that because the evidence shows that there was a high confidence and trust *as a fact.*

Let us pause to remark here that Eugene Ham was not of the timid or bashful kind. Learning early the ways of mastery as a railroad conductor, he was of that aggressive disposition which made him a dominant figure in the politics of his new home town and became mayor of the city of Greenville for two terms, which was just a short while prior to the events herein referred to.

Dr. Smythe very positively drew the conclusion from the symptoms that "C. M. Ham's trouble in speaking was due to a lesion in the brain." It may be true, yet it is difficult to believe that a man nearly three score years of age who had been preyed upon for years by a slowly progressing, incurable malady, which in less than nine months sapped the last of life out of him, had a mind sound and of normal strength. It would seem that "if the mind did not become correspondingly weak

with the body, then nature would not be in harmony with itself.'' *Plant* v. *Plant,* 76 Miss. 563.

We have shown as a matter of law that the partnership relation of the grantor and the grantee was in and of itself a relation of trust and confidence. We have shown as a fact that C. M. Ham had implicit trust and confidence in Eugene Ham, trusted him absolutely, admired him and relied on Eugene Ham taking care of him; that C. M. Ham had virtually retired from the business even two or three years before 1921; that for four or five years his condition had been such that he was not active in the business and his brother Eugene had to take full charge.

We have shown his physical sickness and have suggested the probability of his mental weakness. These circumstances force the conclusion that the relation of the parties as contended for by us, if not necessitated by the circumstances, was the reasonable and natural relation under those circumstances.

Are we not then on safe and solid ground to assert that we have made it clear and manifest that the charge in the bill that the relation of C. M. Ham to Eugene Ham at the time of the conveyance was ''one of the strictest confidence and trust'' is a true charge?

If we have established that relation by the evidence and the law, what is its bearing on this case? See *Hutcheson* v. *Bibb,* 38 So. 754; 2 Pomeroy's Eq. Juris., par. 956; *Spiva* v. *Boyd,* 90 So. 290; *Thomas* v. *Whitney,* 57 N. E. 810; *Henson* v. *Cooksey,* 86 N. E. 1107; *Rutherford* v. *Snieder,* 138 N. E. 181; *Shelvin* v. *Shelvin,* 105 N. W. 260.

With particular reference to the sale by one partner of his interest in the partnership business to another, see 20 R. C. L. 879, par. 91; 22 Am. & Eng. Ency. of Law, page 115; *Ehrmann* v. *Stitzel,* 90 S. W. 278; *Goldsmith* v. *Vrooman,* 152 Fed. 176.

It appears that the defendant Ham makes a sorry figure when he comes to repel the presumptions against him. Under the authorities above it rested upon him ''to

prove satisfactorily that the transaction was just, fair and equitable in every respect.'' So far was he from doing anything of that sort that he absolutely shut us off from making any question about the consideration whatever.

The bill of complaint charged gross inadequacy of consideration. The answer denied the charge. The issue was sharply joined. The record shows the evidence of fered by the complainants, most of it corkscrewed out of Eugene Ham himself. Some of it came from his books. That evidence shows that the pretended discovery made under oath in his answer was a sham and a swindle and that his ''fair price'' is a perfect illustration of gross and shocking inadequacy.

Eugene Ham actually paid about thirty-five hundred dollars in all, about four per cent of the value. If gross inadequacy of consideration is shown, and it further appears that there was a relation of confidence, the relief is certain. Let us now take up the proposition of independent advice. *Thomas* v. *Whitney,* 57 N. E. 810.; *Nobles* v. *Hutton.*

The evidence of Eugene Ham is sprinkled with his statements that C. M. Ham spoke of the matter of disposing of his property in favor of Eugene and that Eugene always told him to go and talk to ''his lawyer'' or to ''his attorney.'' C. M. Ham advised with no other person except Mr. H. C. Watson, the lawyer in the case.

But the evidence discloses that ''his lawyer'' was in Desdemona's dilemma, ''I do perceive here a divided duty;'' for in answer to the question, ''I believe the other witness was H. C. Watson, your attorney in this matter?'' Eugene said, ''Yes, his attorney *and mine.*'' Eugene Ham himself paid the attorney for the service performed in preparing the document. Surely, this was no independent advice.

We earnestly contend that a lawyer with an eye single to the interest of his client alone, knowing expressly as it is said that the other party cared not how the protec-

tion was "set up" and who has determined that a lien ought to be fixed on the property for the protection of his client, would in such a case fix a lien thereon which could not be taken off without the consent of the lien-holder until the debt secured by it was paid. The word fix means "to make fast, firm, immovable." *Logans Port Co.* v. *City,* 89 Fed. 187; *Nat'l Candy Co.* v. *Miller,* 160 Fed. 56.

To emphasize the importance of independent advice, it will be noted that in *Spiva* v. *Boyd,* 90 So. 289, above referred to, that the complainant's own attorney wrote the deed but it was held that under the circumstances of that particular case she did not have the benefit of his independent advice.

There is no showing in this case that C. M. Ham had the advice of any one as to the merit, fairness or business policy of this conveyance.

He who sits in the seat of judgment is bound to conclude that if the defendant was open and candid with his brother, if he was in every respect fair, just, and equitable with him, if he performed his duty "to protect and shield the weaker and to take no advantage of confidence thus bestowed" (*Cox* v. *Parker,* 101 So. 660), he certainly was not open or candid or fair to the court or to his adversaries in this investigation, neither in his pleading nor in his evidence.

Yet the court will please bear in mind that it is not essential to our case to show actual undue influence or any intentional concealment or any misrepresentation or any actual fraud or any mental weakness, old age, or the like. Such is the first principle announced on the authority of Mr. Pomeroy in the beginning of this discussion. Not only is there no "clear evidence," but there is no evidence at all that C. M. Ham had "full knowledge" of the condition or the value of the business or the property.

We have now concluded what we think proper to say on this feature of the case. We submit to the judgment

of the court that we have established with clearness the existence of the confidential relation, that in a very large sense defendant was in fact and in equity his brother's keeper; and we have shown the high ground which a court of equity takes when a transaction between parties so situated comes before it; that it is jealous, almost severe, in its scrutiny and imperative in its demand on the grantee of large and munificent advantages from the confiding party to show by clear evidence that the transaction was just, fair and equitable in every respect. We have shown the obvious failure of the defendant to make a proper response to that demand. If we are correct, we submit that as a matter of right we are entitled to a reversal and a proper decree here.

*Watson & Jayne,* for appellees.

C. M. Ham had a perfect right to convey his property to whom he would, whether for valuable consideration, insufficient consideration, or by gift. Unless fraud entered into the transaction, the grantor himself could not have had the conveyance set aside, nor could his heirs do so under like circumstances. They could rise to no higher position than he. *Jackson* v. *Rowell* (Ala.), 6 So. 96; *Burnett et al.* v. *Smith* (Miss.), 47 So. 117.; *Longmire* v. *Mars et al.* (Miss.), 86 So. 753.

Appellee admits the texts of Pomeroy's Equity Jurisprudence and of 22 American and English Encyclopedia of Law to be as stated by appellants in their brief. However, he contends that he met the burden there cast upon him by overwhelming evidence in the instant case, and is supported therein by the finding of the chancellor below.

It will be kept in mind that the bill, after alleging the partnership and the confidential relation of the two brothers therein, further relied on two grounds;

(a) That the grantor, C. M. Ham, was of unsound mind and incapable of protecting his own interest; and

while under the influence of appellee, appellee caused the deed complained of to be prepared, by the terms of which the deceased, in his lifetime, conveyed to appellee all property of any and every kind owned by the grantor; and

(b) The bill also charges that the consideration for the instrument complained of was so inadequate as to shock the conscience and do violence to all sense of equity and fair dealing between man and man.

So it will be seen that the chancellor had before him for consideration all of the three foregoing questions; that is, that of confidential relation, of mental incapacity, and of inadequacy of consideration; and taking all of these into consideration, together with the facts presented by the evidence, he made his finding and decree in favor of appellee. This decree will not be disturbed on appeal unless the appellate court find that there were not enough facts to support the decree.

The weight of appellant's evidence showed that C. M. Ham was in a sound mental condition at the time of the execution of the conveyance from himself to his brother, E. G. Ham, and also shows that there was no undue influence or overreaching exercised on the part of E. G. Ham, the appellee, in the transaction.

Appellee also maintains that the evidence for appellants on the foregoing subject when supplemented by that of appellee, as above summed up, more than met the presumption of law contended for by appellants, arising out of the close relationship between the two brothers; for the evidence clearly shows that it was the wish, purpose and intent of C. M. Ham to make over all of his property to his brother, Eugene Ham, that he had so expressed himself to his brother, E. G. Ham; to his banker, W. H. Negus; to his physician, Dr. A. G. Payne; to his friend, T. P. McMahon; to another friend, Mr. Donovan; to his confidential attorney, H. C. Watson; and in the presence of W. S. Watson; that the document in question was formulated under his instructions, after several

conferences with his attorney; that a draft thereof was finally made and submitted to him for his examination and his suggestions with regard thereto; that he took it with him, keeping it for several days and then returned it, satisfied therewith; that in several of these conferences he went to his lawyer's office by himself and engaged in private conference with him, without the presence of his brother, E. G. Ham. It was also made clear by the evidence of appellee that when his brother, C. M. Ham, proposed to make over all his property to him, appellee, he, appellee, suggested to his brother, C. M. Ham, that he consult his attorney before taking any such step; and, as appellee also stated, he expressed himself as being satisfied with whatever his brother, C. M. Ham, might do in the matter as well as with any manner or way that it might be carried into effect.

The finding of the chancellor below will not be disturbed on appeal unless such findings are against the overwhelming weight of the evidence. *Smith* v. *Bolinger* (Miss.), 107 So. 563; *Watson* v. *Owen* (Miss.), 107 So. 865; *Pierce* v. *Garret* (Miss.), 107 So. 885; *Ayers* v. *Tonkel* (Miss.), 103 So. 361; *Planters Gin & Milling Co.* v. *City of Greenville* (Miss.), 103 So. 796.

The following Mississippi cases make clear what degree of mental capacity is required in order to validate the acts of a testator or grantor. *Gillis* v. *Smith*, 75 So. 451; *Simonton* v. *Bacon*, 49 Miss. 582. See, also, 1 Devlin on Deed, section 70, page 116. Appellee earnestly urges that *Gillis* v. *Smith*, is decisive on this question of undue influence. In this connection we also refer to *Wherry* v. *Lattimer*, 103 Miss. 524, 60 So. 563, 642; *Knox* v. *Knox*, 95 Ala. 495, 11 So. 125, 36 A. S. R. 235.

Argued orally by *H. H. Elmore*, for appellants, and *H. C. Watson*, for appellees.

SMITH, C. J., delivered the opinion of the court.

This is a suit in equity in which the appellants seek to set aside a deed executed by C. M. Ham, now deceased, to the appellee, Eugene Ham, and the appeal is from a decree dismissing the bill. The complainants in the court below, the appellants here, are a brother, a sister, and the heirs at law of a deceased sister, of C. M. Ham, and the principal defendant in the court below, and the principal appellee here, is a brother of C. M. Ham. The ground on which the deed is sought to be canceled is that when it was executed the relations between C. M. and Eugene Ham were of such a fiduciary nature as to make the execution of such a deed *prima facie* fraudulent and void.

The case was tried on bill, answer and proof, and the facts appearing therefrom are, in substance, as follows:

C. M. Ham was a bachelor and was, for a number of years, engaged in the mercantile business in Greenville, Miss. In 1902, he induced his brother, Eugene, to come to Greenville and join him in the business, giving him a one-half interest therein, the business being thereafter conducted under the firm name of "C. M. and E. G. Ham." In February, 1905, C. M. Ham executed a will by which he devised all of his property to his brothers and sisters. On April 23, 1924, he conveyed practically all of his property, which consisted of real estate and his interest in the firm of "C. M. and E. G. Ham," to Eugene Ham, the consideration being that Eugene would pay C. M. Ham two hundred fifty dollars a month for the remainder of C. M. Ham's life, and, in addition, would pay his physician and hospital bills, in event of his illness, and his funeral expenses at his death. In 1921, C. M. Ham's health began to fail, and he gradually grew worse until his death on January 17, 1925. The active management of the business, because of C. M. Ham's ill health, devolved more and more upon Eugene Ham, and, for some time prior to the execution of the

deed, it was practically under his sole supervision and control.

The relations between C. M. Ham and Eugene Ham were close and intimate, C. M. Ham having a very strong and intense affection and admiration for Eugene Ham. The physician who advised and treated C. M. Ham after his health began to fail looked to Eugene for the execution of the various plans devised by him for C. M. Ham's comfort and convenience. C. M. Ham objected to some of the things which his physician advised him to do, but seems to have acquiesced therein on the advice of Eugene. The disease with which C. M. Ham was stricken was incurable, and was, according to his physician, who advised him and Eugene Ham, certain to result in death within a reasonably short time.

The deed to Eugene Ham was not intended as a gift, but, according to the evidence of Eugene himself, was a straight bargain and sale. Why C. M. Ham executed the deed does not appear, unless, as seems to be intimated by some of the evidence, he was afraid he would become an invalid and feared trouble over his property from some of his relatives. Eugene testified that when his brother decided to execute the deed that he told him to advise with his attorney. Shortly thereafter C. M. Ham and Eugene Ham together consulted with an attorney, advising him what C. M. Ham wished to do. This attorney advised them as to the character of the instrument which should be executed in order that C. M. Ham might be protected in the receipt of the annuity which Eugene Ham was to give him for the property, drew up the deed, and submitted it to C. M. Ham, who suggested some changes therein. This attorney had, for a long time, been the attorney for both C. M. Ham and Eugene Ham, and continued as such for Eugene thereafter.

The evidence does not disclose that Eugene brought any pressure to bear on C. M. Ham to induce him to execute the deed; the evidence being barren of any facts, other than as hereinbefore stated, which led to the exe-

cution of the deed. While there is some evidence tend-
ing to show that C. M. Ham was not as mentally alert at
the time of the execution of the deed as he had been prior
thereto, his physician and others testified that his mind
was in no way impaired, and the appellants do not pred-
icate their right to the cancellation of the deed on either
mental inefficiency or undue influence, in fact.

At the death of C. M. Ham, his will was probated by
Eugene Ham, who was named as executor therein, and he
took into his possession, under the will, a small amount
of cash and some clothing, that being all the property
left by C. M. Ham unless the deed here in question should
be canceled.

The appellants attempted to prove the value of the
property conveyed by C. M. Ham to Eugene Ham, but,
on objection by counsel for the appellee, the evidence
introduced for that purpose was excluded. There was
some evidence as to the value of the property which seems
not to have been excluded, from which it seems to ap-
pear that it was worth, in round numbers, about eighty
thousand dollars. The evidence offered by the appel-
lants, but not permitted to be introduced, was for the
purpose of showing that the property was worth more
than that amount. The money paid by Eugene Ham
to C. M. Ham, and for his physician, hospital bills, and
burial expenses, under the terms of the deed, amounted
to three thousand five hundred dollars.

It will be observed from the foregoing statement that
the conventional, fiduciary relation that existed between
C. M. Ham and Eugene Ham was that of partners in
business. A partnership is essentially a relation of trust
and confidence, but we are not called upon here to decide
a case where the fiduciary relation is that only which
grows out of a partnership, for it is beyond dispute that
the relation which existed between C. M. Ham and Eu-
gene Ham was much more close and intimate than that
which the law presumes from the mere fact of their be-
ing partners in business. We will treat the partnership

simply as one of the evidences of the existence of a fiduciary relation between them in fact. The rules governing gifts, conveyances, etc., between parties to such a fiduciary relation are the same as those governing gifts, conveyances, etc., between parties occupying the conventional fiduciary relations, such as physician and patient, attorney and client, guardian and ward, trustee and *cestui que trust,* etc.

"It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal, it may be moral, social, domestic, or merely personal." 2 Pomeroy Equity Jurisprudence (4th Ed.), section 956.

When such a relation exists, and the parties thereto— "consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealing some conveyance or contract or gift, . . . the principle literally and directly applies. The transaction is not necessarily voidable, it may be valid, but a presumption of its invalidity arises which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action." 2 Pomeroy Equity Jurisprudence (4th Ed.), section 957.

The burden of overcoming this presumption is on the party claiming under the conveyance, contract, or gift. *Meek* v. *Perry,* 36 Miss. 190; *Hitt* v. *Terry,* 92 Miss. 710, 46 So. 829.

We are not here confronted with, and express no opinion on, a case where the consideration for a deed appears adequate, for, according to the evidence, the value of the property is either not disclosed, or, if disclosed, the value thereof, as hereinbefore set forth, is such as to make the consideration therefor grossly inadequate. The evidence fails to disclose that when he executed the deed, C. M.

Ham had full knowledge of the value of the property conveyed, of the relation of the consideration therefor thereto, and that it was executed of his own independent consent and action.

The usual method of proving independent consent and action in such cases, and probably the only way it can be clearly proven, is by showing that in making the deed the grantor acted on the advice of a competent person, disconnected from the grantee and devoted wholly to the grantor's interest. 2 Pomeroy Equity Jurisprudence (4th Ed.), sections 958 and 960, and notes on pages 2040, 2041; 1 Black on Rescission and Cancellation, section 40; *Nobles* v. *Hutton,* 7 Cal. App. 14, 93 P. 293; *Spiva* v. *Boyd,* 206 Ala. 536, 90 So. 289; *Thomas* v. *Whitney,* 186 Ill. 225, 57 N. E. 810; *Post* v. *Hagan,* 71 N. J. Eq. 234, 65 A. 1026, 124 Am. St. Rep. 997; *Soper* v. *Cisco,* 85 N. J. Eq. 165, 95 A. 1016, Ann. Cas. 1918B, 452; *Pironi* v. *Corrigan,* 47 N. J. Eq. 135, 20 A. 226; *Hall* v. *Otterson,* 52 N. J. Eq. 522, 28 A. 910.

Instead of dismissing the appellant's bill, the court below should have granted the prayer thereof.

*Reversed and remanded.*