LINDEMAN'S ESTATE *et al. v.* HERBERT *et al.*

(Division B. Feb. 19, 1940. Suggestion of Error Overruled April 1, 1940).

[193 So. 790. No. 34050.]

May & Byrd, Green & Green, and **W. B. Fontaine**, all of Jackson, for appellants.

Green & Green, of Jackson, for appellants.

Robertson & Robertson, of Jackson, for appellees.

849

850

Argued orally by **George W. May** and **Garner W. Green,** for appellants, and by **Stokes V. Robertson, Sr.,** and **Stokes V. Robertson, Jr.,** for appellees.

**McGehee, J.,** delivered the opinion of the court.

This is a contest between certain residuary legatees named in the last will and testament of Mrs. Elizabeth Lindeman, deceased, and the ultimate beneficiaries of an alleged gift inter vivos of certain corporate stock, of the value of approximately $20,000 to $25,000, listed in the will as an asset of the estate, and which stock is alleged by the latter claimants to have been given to Julius A. Mosal by the testatrix a few months prior to her death, but subsequent to the execution of the said last will and testament.

The said Mosal, who was a nephew of the testatrix, and in whose home she resided, was named as one of the executors of the will, and died shortly after her death. He had joined his co-executor in filing an inventory of the assets of the estate, and in which the stock in question was omitted from the list thereof. It was likewise omitted from a supplemental or additional inventory filed by the surviving executor. Subsequently, a petition was filed by the appellees, as residuary legatees, against the surviving executor, as provided for by Section 1651 of the Code of 1930, to compel a more complete inventory on the alleged ground that the inventories returned did not contain a full account of all of the property, goods, chattels and effects of the deceased testatrix.

The will specifically directed that the corporate stock aforesaid, which is the subject matter of the alleged gift, should be sold by the executors along with the other assets of the estate for the payment of numerous legacies therein mentioned, by far the largest of which, in the sum of $10,000, was in favor of the said Mosal. Section 1622 of the Code of 1930 requires that the directions of the will are to be followed by the executor. Hence, the burden of proof was upon the appellants, and particularly those claiming this stock through Mosal, the deceased executor, not as purchasers for value, to prove that the same was not a part of the assets of the estate being administered. This burden of proof rested upon the latter for the further reason that at the time of the alleged gift Mosal occupied the relation to Mrs. Lindeman of principal and agent, kinship, confidential adviser in her business affairs, an executor to serve without bond, and that of close personal association, trust and affection, and which fiduciary and confidential relation was further augmented by other circumstances disclosed by the record, unnecessary to here relate in detail, such as would make applicable the rule announced in the cases of Ham et al. v. Ham et al., 146 Miss. 161, 110 So. 583; Bourn v. Bourn et al., 163 Miss. 71, 140 So. 518; Watkins et al. v. Martin et al., 167 Miss. 343, 147 So. 652, and cases therein cited, to the effect that the alleged gift was presumptively void and unenforceable. At any rate, the same could not be upheld except upon clear and convincing proof of full knowledge and independent consent and action on the part of the donor.

The stock was endorsed in blank by the testatrix a few months prior to her death, at the age of 90 years, and under circumstances not inconsistent with the directions contained in her will for the same to be sold by her executors and applied to the payment of the legacies, with remainder of the net proceeds of the whole estate to go to the residuary legatees therein named. On the reverse side of each stock certificate there was a printed formal

assignment and transfer in which the name of the assignee or transferee was to be written in a blank space left for that purpose. The name of Mosal was not written therein, nor was his name mentioned on the occasion when the testatrix endorsed the stock in blank at the request of his agent. What actually occurred at that time, according to the testimony of the agent, was that he took the stock certificates to the home of the testatrix and asked her to endorse them, and that she then asked him, "Are they going to be transferred now?" And to which he replied: "Yes, ma'am, they are going to be transferred now, but you are to get the dividends on them as long as you live." She then wrote her name on the back of the certificates, and they were then delivered back to the agent, who had received them from Mosal prior to this transaction.

The alleged donee's possession of the stock, both before and after its endorsement, was apparently consistent with the relationship which he sustained to the testatrix, and was likewise consistent with her continued ownership thereof, since he, with her full knowledge and consent, had the only key by means of which they could have been obtained from her lock-box at the bank, for any purpose, or returned thereto.

Thus, it will be readily seen that the making of an inter vivos gift is not established by the endorsement of the stock by the testatrix and its possession by Mosal under the circumstances above mentioned.

Moreover, the testatrix lived nearly five months after the stock had been thus endorsed, and she left the executors charged at her death with the responsibility under the terms of her will of administering the stock in question for the benefit of all of the legatees of her estate, without making or suggesting a codicil to the instrument which she had written in her own hand. Nor did she leave any other written memorial of having disposed of this stock by gift, although it was listed in the will and constituted approximately one-third of the value of her en-

tire estate. The proof disclosed that during this interim the testatrix was in full possession of her mental faculties and had a remarkably retentive memory.

As observed by the chancellor in his written opinion, which appears as a part of the record, the agent of Mosal who procured the endorsement of the testatrix on the stock certificates was exceedingly frank in his testimony as to what occurred, and we are of the opinion that the chancellor was correct in holding that the facts related by him in connection with the endorsement of the stock failed to establish the gift.

There were other facts and circumstances testified to, including certain hearsay testimony elicited by counsel for the residuary legatees and rendered competent by not being objected to, which support the contention that such a gift was made, but there are certain deductions that may be reasonably drawn from the further facts disclosed by the record which in our opinion amply sustain the decree of the court below in holding that the gift of this stock, inter vivos, was not clearly shown by the evidence. That which happened subsequent to the endorsement of the stock was inconsistent with what transpired at the time; and a discussion of which events could serve no useful purpose in this opinion.

But, it is insisted that inasmuch as the petition of the residuary legatees for a more complete inventory and their objections and exceptions to the surviving executor's response to said petition did not waive answer under oath, the sworn answers of said executor and of the ultimate beneficiaries of the alleged gift could not be overthrown except by the testimony of two witnesses or of one witness and corroborating circumstances, as provided by Section 383 of the Code of 1930. Responding to this contention, it may be conceded that the petition above mentioned, although sworn to, merely charges that the petitioners are "advised and believe" that the testatrix was at the time of her death the owner of the particular stock in controversy; and while the affidavit thereto states

as a fact that the matters and things stated in the petition are true and correct, it is clear that the affiant merely meant to say that it was true that the petitioners were advised and believed that the stock belonged to the testatrix, since that was the averment of the petition then being sworn to. In reply, the answer of the executor, sworn to as aforesaid, was filed, and it averred that he knew of his own personal knowledge that the testatrix made a gift of the stock to the alleged donee. However, as a witness upon the trial of the case, after having been introduced by the petitioners, he testified to facts which disclosed that this averment in his answer was made primarily upon information received from and certain statements made by the alleged donee, and that he had no personal knowledge of the facts or the circumstances under which the gift was alleged to have been made, other than what occurred when the stock was endorsed as hereinbefore stated, when neither the matter of a gift nor the name of a donee was mentioned. Therefore, under the rule announced in the case of Fant et al. v. Fant et al., 173 Miss. 472, 162 So. 159, the facts testified to by this witness, when considered with the other corroborating circumstances were sufficient to overthrow this averment of personal knowledge contained in the answer of the surviving executor. As to the sworn answer of the ultimate beneficiaries of the alleged gift, the same was filed in response to the objections and exceptions of the residuary legatees to the answer of the said executor, and the pleading containing such objections and exceptions was sworn to, not upon information and belief, but by positive oath, and the pleading itself contained a positive and unequivocal allegation that the stock in controversy was not assigned, transferred, conveyed or delivered to the alleged donee thereof during the lifetime of the testatrix. Hence, even if Section 383 of the Code of 1930 had any application, the answers were entitled to be given ''only such weight and credit as in view of the interest of the party making the same, and the other

circumstances of the case, it may be fairly entitled to.'' However, in matters testamentary and of administration no answers under oath were required, whether waived or not. Section 370 of the Code of 1930. The chancery court in the matter of estates administered may hear and determine objections and exceptions, etc. without adherence to the strict rules of pleading.

Finally, it is contended that the fact that a confidential and fiduciary relation may have existed between the alleged donor and donee cannot affect the rights of those who now claim the stock by mesne transfer from the donee. In support of that position, our attention is called to the case of Fant et al. v. Fant et al., supra, wherein the Court assumed for the sake of argument that the evidence, plus some admissions in his answer, disclosed a confidential relation between Fant, Sr., and the grantor, but that it did not disclose any such relation between Fant, Jr., and the grantor. That case is not applicable on the point here being considered, for the reason that Fant, Jr., was not claiming title through Fant, Sr., but under a different deed of gift from the grantor, and apparently conveying different land.

While the execution of the aforementioned printed formal assignment in favor of the alleged donee was not essential to a valid gift, yet such an act, or other written memorandum in that behalf, accompanied by the delivery of the stock certificates, would have constituted proof of an intention on the part of the testatrix to part with the ownership thereof; since such intention was not otherwise expressed when they were endorsed in blank under the circumstances disclosed. It is true that the agent who procured the endorsement states that a few days prior to the death of the testatrix, which occurred a few months later, she told him that she was not entitled to receive a certain dividend check on part of the stock in question for the reason that she had given it all to Mosal. Nevertheless, the chancellor was confronted with the further fact that she then asked the agent to get the

matter straightened out for her, with the result that this check was returned to the corporation, and a cashier's check in excess of $2,000 for the dividend on all of the stock was forthwith delivered to her, which she endorsed with instructions that the proceeds be deposited to her account. This action on her part was consistent with the understanding which the agent had with her when the certificates were endorsed, and was inconsistent with the idea that she thought she was not entitled thereto. There was no proof that she ever knew that her stock had been surrendered to the corporation and cancelled, and that new certificates had been issued in favor of a trustee under a trust agreement whereby the dividends therefrom were irrevocably assigned to other persons. The contention that she knew this from the fact that she received the dividend check from the trustee bank is untenable, for the reason that the check referred to was merely a cashier's check as heretofore stated.

We deem it unnecessary to discuss more at length the legal questions raised, or to review the numerous authorities cited in the briefs. It is sufficient that we say, under the well established rule, we are not justified in disturbing the finding of the chancellor unless it should appear to us that he was clearly and manifestly wrong. We are unable to so hold. Therefore, the decree appealed from must be affirmed.

Affirmed.