SUNFLOWER FARMS, INC., et al. *v.* McLEAN

No. 40658          March 17, 1958          101 So. 2d 355

*Forrest G. Cooper,* Indianola, for appellants.

74

*Charles C. Jacobs,* Cleveland; *Jas. D. Causey, E. B. Kimpel,* Memphis, Tennessee, for appellee.

76

HALL, J.

This suit was brought by the appellee against Sunflower Farms, Inc., William C. McLean and Dave Gordon to set aside a deed from Mrs. Irene C. McLean to Dave Gordon and a subsequent conveyance by him to Sunflower Farms, Inc. on the ground that the deed was without consideration and that the said deeds constitute a cloud upon the complainant's title which is sought to be cancelled, and that he be vested with the full legal title to the lands involved. By an amendment it was also alleged that the three named defendants are vested with the legal title and are claiming full ownership of the land in question, and alleged that they are holding the same as trustees for the benefit of complainant and collecting the rents thereon, for which an accounting is asked.

The lower court granted the relief prayed for, from which action this appeal is prosecuted. There is involved in the suit a tract of approximately 1,400 acres of land.

The background of the suit, as shown by the record, is as follows: R. D. McLean, Sr. had owned the land in question for a great many years and, being engaged in the contracting business, which is a financially hazardous business, he had conveyed the land to his wife, Mrs. Irene C. McLean. In 1952 he had a suit pending in the Federal court wherein he had sued for a large amount of money and the defendant in that suit had filed a counterclaim against him and he was fearful that there might be a judgment against him on said counterclaim, though in fact it does not appear from the record that such judgment was ever rendered. While this suit was pending Mrs. Irene C. McLean suffered a cerebral hemorrhage on September 20, 1952, and she was in a critical condition in a hospital at Greenville, Mississippi, for some time. R. D. McLean held a full power of attorney from his wife Irene but he was fearful that she was going to die and that he, being her only heir, would inherit the land and it might be subjected to the payment of any judgment which might be rendered in the pending suit in the Federal court. He accordingly telephoned to his brother, William C. McLean, who is an attorney at law at Tampa, Florida, and he requested his brother to catch the first plane and come to Greenwood, Mississippi, where he would meet him. The brother came and they spent two days together, viz. September 23rd and 24th, discussing the affair, and attending to other business. The brother returned to Florida and prepared the deed and mailed it to R. D. McLean and it was executed by R. D. McLean individually and as attorney in fact for Mrs. Irene McLean. A short time later, after Mrs. Irene C. McLean had improved to some extent and had regained consciousness, the brother prepared another deed to be executed in favor of his friend and client, Dave Gordon of Tampa, and notified

R. D. McLean that he had decided that he did not want to take the title in his own name. The deed to Dave Gordon is dated September 24, 1952, but was actually not executed and acknowledged until November 6, 1952. W. C. McLean admitted that Dave Gordon was merely a dummy or conduit for the purpose of getting the title into W. C.'s name.

On November 13, 1952, Dave Gordon executed to R. D. McLean a power of attorney fully authorizing him to look after the land, to rent and control it, to collect and handle all income from the land, and he continued in charge of the property without any apparent change until the time of his death on September 9, 1954.

On August 21, 1954, R. D. McLean, who was then apparently in good health, executed his last will and testament whereby his wife Irene C. McLean was devised the fee simple title to all of his property, *real,* personal and mixed. Nineteen days later, R. D. McLean died suddenly of a heart attack.

In January 1953, R. D. and Irene McLean sold or contracted to sell, in separate tracts, 240 acres of the land in question to A. E. Staggs and Fred Staggs, and on October 22, 1953, William C. McLean wrote a letter to R. D. McLean in which he said: "I want you to write me whether you have made your income tax return for last year and if you are going to make a return for this year to show the proceeds of rent and capital gains? If you have not done so, you must do this. Dave asked me about this and, of course, he does not want to become involved and neither do I. I suppose the return has been filed but be sure and let me know." Pursuant to this letter R. D. McLean and Irene C. McLean filed a joint individual income tax return for the calendar year 1953 on March 10, 1954, and in this return they reported all of the rents received from the land in question as being their own income, and they also reported as a long term capital gain the profit on the sale of the land to A. E. and Fred

Staggs, as well as interest received, and they took depreciation on the remaining lands, just as if they were the sole owners thereof.

Shortly after the death of R. D. McLean on September 9, 1954, William C. McLean organized in Florida the corporation known as Sunflower Farms, Inc. There are only fifty shares of stock in the corporation and William C. McLean and his wife were each issued sixteen shares and his three children were issued six shares each, making a total of fifty shares which was all of the stock of the company and this stock was valued in excess of $1,700 per share. Strangely, the charter of incorporation does not require that the president thereof be a stockholder. On October 8, 1954, Dave Gordon conveyed to Sunflower Farms, Inc. the land in question and he was elected president of the corporation. According to the record Mrs. Irene C. McLean did not know until after the death of her husband that the property had been conveyed to Dave Gordon. This information was conveyed to her by William C. McLean after the funeral of R. D. McLean.

Shortly after the death of R. D. McLean, Mrs. Irene C. McLean executed her last will and testament in which she named R. D. McLean, Jr. as sole beneficiary. He was an adopted son of R. D., Sr. and Irene. The adoption was handled by William C. McLean as attorney and it specifically provided that R. D. McLean, Jr. should not be an heir of the adopting parents. Mrs. Irene C. McLean died on February 23, 1955, approximately five and one-half months after her husband, after which R. D. McLean, Jr. filed her will for probate, the same was admitted to probate, he was appointed executor thereof, and this suit is brought both in his own name individually and as executor of Irene's estate.

Appellant has filed an assignment of errors which contains ten grounds, but the main argument in the case is that the decree is contrary to the law and the evidence. The record in this case consists of 641 pages, a great deal

of which consists of exhibits, many of them being wholly immaterial to a decision of the case. The original brief for the appellants extends to the stupendous length of 197 pages. The brief for the appellee is 160 pages in length and a reply brief for the appellants is 51 pages. There are many repetitions in the briefs, especially in the original brief for appellants, and there is no reasonable excuse for briefs to be of such unreasonable length in a case of this type. We do not propose to deal at length with the proof in the case further than what we have already stated, which we think is sufficient to show that the decree of the chancellor is justified by the record and, at least, we cannot say that it is manifestly wrong.

Appellants rely principally upon Section 269 of the Mississippi Code of 1942, which is as follows: "Hereafter all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void; and every writing declaring or creating a trust shall be acknowledged or proved as other writings, and shall be lodged with the clerk of the chancery court of the proper county to be recorded, and shall only take effect from the time it is so lodged for record; *but where any trust shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed.*" (Emphasis supplied.)

In the case of Saulsberry v. Saulsberry, 223 Miss. 684, 690-1, 78 So. 2d 758, we said :

"A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has ob-

tained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy. 54 Am. Jur., Trusts, Sec. 218. A constructive trust is an appropriate remedy against unjust enrichment. Ibid., Sec. 219. The mere failure to perform an agreement does not raise a constructive trust, but a breach of an agreement or promise may, in connection with other circumstances, give rise to such a trust. A distinction exists between the breach of a promise not fraudulently made and the breach of a promise made with no intention of performing it. Ibid., Sec. 221.

" 'While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one. The origin of the confidence reposed is immaterial. A confidential relationship within the rule need involve neither a promise for the benefit of another nor an express fiduciary relationship.' 54 Am. Jur., Trusts, Sec. 225.

* * * " '* * * Where a confidential relationship is shown to exist between parties to the deed, and where the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence, or, as is sometimes said, a deed is prima facie voidable in such cases. Under such circumstances the burden or duty of repelling or rebutting such a presumption is cast upon the grantee. 16 Am. Jur., Deeds, Sections

392-395, 402; 26 C. J. S., Deeds, Sections 193, 58; Watkins v. Martin, 1933, 167 Miss. 343, 147 So. 652; Lindeman's Estate v. Herbert, 1940, 188 Miss. 842, 193 So. 790; Ham v. Ham, 1926, 146 Miss. 161, 110 So. 583; Bourn v. Bourn, 1932, 163 Miss. 71, 140 So. 518; Griffith, Miss. Chancery Practice (2d ed. 1950), Section 589.''

On the second appeal in the same case, No. 40,664, decided February 24, 1958, not yet reported, we quoted with approval from Pomeroy, as follows: ''Resulting trusts * * * are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. Pomeroy's Equity Jurisprudence, Vol. 4, Fifth Edition, p. 62, par. 1031.''

Numerous other authorities are cited by the appellee in his brief, which will appear in the reporter's digest of the briefs in this case and, while the testimony of William C. McLean is rather confusing as to various financial transactions between himself and R. D. McLean from 1952 to R. D.'s death in 1954, ▆ ▆ we think that in view of all of the evidence in the case the chancellor was justified in holding that the deed to Dave Gordon, on the suggestion of William C. McLean, was without consideration, and further that the chancellor was justified in holding that there was a constructive trust, that his decree should therefore be affirmed, and that the case should be remanded for an accounting.

The appellee has filed a cross-appeal against the action of the lower court in excluding certain evidence, but we do not think that it is necessary for us to pass upon

the cross-appeal in view of the decision which we have made in this case.

Affirmed and remanded.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.