Sunflower Farms, Inc., et al. *v.* McLean, et al.

No. 41323 February 8, 1960 117 So. 2d 808

170

*Forrest G. Cooper, Frank O. Crosthwait,* Indianola, for appellants.

*Charles C. Jacobs, Jr.,* Cleveland; *James D. Causey, E. B. Kimpel, Jr.,* Memphis, Tenn., for appellees.

LEE, J.

This is the second appearance of this cause here. Sunflower Farms, Inc., et al. v. McLean, 233 Miss. 72, 101 So. 2d 355. The opinion in that case affirmed the decree of the lower court, which had held that the deed from Irene C. McLean and husband, R. D. McLean, to Dave Gordon, on the suggestion of William C. McLean, was without consideration, and that a constructive trust was created. The cause was therefore remanded solely for an accounting under the trust.

At the conclusion of the second trial, the court made a detailed finding. Some of the funds, by agreement, had been placed in escrow, and those funds, together with others, which were found to be due, were ordered to be paid to R. D. McLean, Jr., the complainant. Credit was given for the payment of debts and other proper expenditures. Certain allowances for damages of 5% and for interest were also made; and two deeds of trust from Irene Cox McLean and R. D. McLean to the Planters Bank & Trust Company of Ruleville, Mississippi, as therein described, were cancelled. The terms of the decree were fully complied with by the defendants' paying over and delivering the amount therein awarded to

the attorney for the complainant. The defendants appealed, and the complainant prosecutes a cross-appeal.

The record on the first appeal was made a part of the record on the present appeal; and, to get a complete picture, it is necessary to review certain pertinent facts, which were developed in the former trial, along with the additional evidence in the second trial.

On May 1, 1950, R. D. McLean, being then in a financially hazardous business, for a consideration of $10 and the assumption of an indebtedness to the Federal Land Bank of New Orleans, conveyed and warranted to his wife, Irene Cox McLean, about 1,400 acres of land in Sunflower County, together with all farming implements, accounts and rents due by tenants, and all indebtedness due by J. M. Parks and Wife and P. J. Townsend, as evidenced by notes and deeds of trust on lands sold to those persons, and, by said instrument, assigned those notes and deeds of trust to her. She, in turn, executed a full power of attorney to him.

On January 2, 1952, Irene Cox McLean and husband, R. D. McLean, executed to Planters Bank & Trust Company of Ruleville, Mississippi, a deed of trust on the same real estate and personal property to secure the payment of $25,000 as well as all future advances that might be made. As collateral security $25,000 in U. S. Bonds and the A. E. Staggs' deed of trust was hypothecated. This action no doubt stemmed from the fact that a suit for a large sum of money was filed against R. D. McLean in the Federal Court.

Thereafter, on September 20, 1952, Mrs. Irene Cox McLean suffered a cerebral hemorrhage and was in a critical condition at a hospital at Greenville, Mississippi. At this juncture, R. D. McLean got his brother, William C. McLean, an attorney of Tampa, Florida, to come to Mississippi. After they had spent the 23rd and 24th of September in discussion of the matter, the attorney-brother returned to Florida and prepared and

mailed to R. D. a deed for execution by him, individually and as attorney in fact for his wife, with William C. as the grantee. The deed was executed and acknowledged, and returned to William C. However, after receiving the deed, William C. decided not to accept it. Subsequently, on November 4, 1952, after Mrs. McLean regained consciousness and improved to some extent, although her condition was still somewhat desperate, William C. prepared and sent to R. D. another deed to these lands for execution by himself and his wife to Dave Gordon of Tampa, who was in fact unknown to Mrs. McLean. This deed, although dated September 24th, was not acknowledged by the McLeans until November 6, 1952. Dave Gordon, in turn, on November 13, 1952, executed to R. D. McLean a general power of attorney; and, pursuant thereto, R. D. continued in charge of the property without any apparent change.

Two deeds for 160 and 80 acres dated November 1, 1952, were executed by Dave Gordon to Fred Staggs and A. E. Staggs, Jr., respectively. This occurred five days prior to the date of the acknowledgment of the deed from the McLeans to Dave Gordon.

R. D. McLean, apparently in good health, on August 21, 1954, executed his last will and testament, devising all of his property, real, personal and mixed to William C. as trustee for the interest of his wife, her mother, and his two grandchildren; and, only nineteen days later, he died suddenly from a heart attack.

On September 9, 1954, William C. McLean organized the Sunflower Farms, Inc., with the 50 shares of original stock issued to him, his wife, and two children; and on October 8th thereafter, Dave Gordon, admittedly a mere conduit, conveyed all of the land and property to Sunflower Farms, Inc., and, although he was not even a stockholder, he was elected president of the corporation

Mrs. Irene C. McLean did not remember and apparently did not know, until William C. told her after the funeral of her husband, that the property had been conveyed to Dave Gordon. Shortly thereafter, she executed her last will and testament, naming as the sole beneficiary R. D. McLean, Jr., who was adopted by the McLeans in a proceeding, handled by William C., in which it was specifically provided that he should not become their heir. The testatrix died on February 23, 1955, and R. D., Jr. filed the will for probate. He then instituted this suit both in his own name and as the executor of Irene C. McLean's estate.

In the original trial, the complainant had offered evidence to the effect that bonds, cash, notes and rents in the aggregate of about $127,000 of the property of Mrs. McLean came into the hands of William C. Subsequent collections were thereafter made prior to the date of the final decree of November 14, 1958.

The burden of the appellant's complaint against the decree, as a whole, is that the deed from R. D. to his wife Irene did not convey cash and negotiable bonds owned by him; that this property was conveyed by no other bill of sale or document; that Mrs. McLean had no means of acquiring such property except through her husband, and that, since the proof did not show affirmatively that she owned such property in her lifetime, William C. McLean should not have been required to account for it, because the following sums were "given to him by R. D. McLean," to-wit: (1) $25,000, (2) $4,-000; (3) $3,850.13, (4) $4,500, (5) $25,000, (6) $10,000, (7) $9,000, (8) $7,000.

In the accounting, however, William C. gave credit for items (5) and (6) which represented $35,000 of U. S. Treasury Bonds. Item (7) was accounted for as being bonds attached to a draft. Item (8) was also accounted for as U. S. Treasury Bonds.

Items 1 through 4, inclusive, were not included in the appellants' original accounting. They were not disclosed until after repeated efforts on the part of the appellee.

William C.'s explanation of how he got money to purchase the Planters Bank & Trust Company's deed of trust was that R. D. gave him $10,000 of U. S. bearer bonds; that he also told him that he could use therefor $25,000 of U. S. Bonds, put up as collateral security in that deed of trust; and that he also gave him $4,000 in Cashier's Checks. The attractive provision of this aforesaid deed of trust was that it provided for future advances. Under the course of dealing, R. D. could, and did, send money and bonds to be deposited in William C.'s bank account, and, when he needed money, as attorney for Irene C. McLean, he would draw drafts. In this way it was made to appear that there was a large indebtedness against the property. Finally, the execution of the deed from Irene C. McLean and husband to Dave Gordon was the clincher.

Large sums of money and bonds, and all of the rents on the lands, were sent to William C. McLean and Dave Gordon, respectively, and Gordon in turn delivered the rent to William C. This course of conduct continued from the Fall of 1952 until R. D.'s death.

The first question for determination is whether there was substantial evidence to prove that the money and bonds handled by R. D. were in fact the property of Irene C. McLean.

Certain developments, depicted in the record, shed considerable light on this question. For instance: (1) It was William C.'s position at first that all of the bonds, which came into his hands, belonged to R. D. But when the envelope, in which some of the bonds were shipped, was produced, together with the memorandum thereon, he admitted that those bonds in the amount of $19,000 belonged to Irene. (2) While originally William C.

claimed that the land belonged to R. D., who wanted him to have it, his testimony showed that R. D. told him that the title was in Irene's name, but that he had a power of attorney and would execute a deed in her name. (3) While William C. had claimed, as a gift, the down payment of $7,500 on the lands which R. D. and Irene in January 1953 had contracted to sell to A. E. and Fred Staggs, he, as a matter of fact, wrote R. D. to file an income tax return for 1953, showing the proceeds of rent and capital gains. Pursuant thereto, R. D. and Irene filed their return in which they reported, as their income, the rents, the profits from the sale of the land to the Staggs as a long term capital gain, and interest received. They also took depreciation on the remaining lands just as if they were the sole owners. (4) The account of Irene C. McLean with the Planters Bank & Trust Company of Ruleville, Mississippi, showed a deposit to this account on January 12, 1952, of $25,000. There is nothing in the record to show that R. D. had any bank account. (5) A note, dated May 17, 1952, to Planters Bank & Trust Company in the amount of $2,000, signed by Irene Cox McLean, hypothecated $5,000 in U. S. Treasury bonds. This note was included in the assignment to William C. on September 24, 1954, by the bank of its deed of trust of date of January 2, 1952. Obviously these bonds, Irene's property on the face of the record, were a part of the consideration for the purchase of that deed of trust. (6) In the Fall of 1952 R. D. was borrowing money, as the agent of Irene. For instance, three notes, dated September 26, October 1, and October 12, for $5,000, $1,000, and $5,000, respectively were executed by him, as attorney in fact for Irene, to Planters Bank & Trust Company. In the first and second of these notes the Stagg notes on the land were hypothecated. (7) There was also outstanding an indebtedness of $20,000 to First National Bank of Memphis, secured by the cash surrender values of certain

insurance policies on the life of R. D. McLean. The last two renewals on November 3, 1952, and March 10, 1953, were signed also by Irene C. McLean. This note was paid June 29, 1953, out of insurance monies to which Mrs. Irene McLean was entitled, following the death of her husband.

Numerous drafts were drawn by R. D. on William C., and he testified that the amount of such drafts totaled $34,720.90. His position was that R. D., in drawing the drafts, was acting as attorney in fact for Irene C. McLean, but that, when money and bonds were received from R. D., such assets were gifts to him from his brother. A striking instance is the alleged gift of $4,500 on November 10, 1952. Yet on November 28th thereafter, R. D. drew a draft on William C. in the amount of $4,407.23 for a Cadillac automobile.

■■ No instrument from R. D. to his wife, conveying cash and bonds, was offered in evidence. However, such was not necessary because the ownership of both cash and bearer bonds passes on delivery. It is possible of course that R. D. owned a number of bonds and cash and kept such property in a safety deposit box, or cashed in some other supposed safe place. But there is nothing in this record which raises such a possibility to the dignity of a reasonable probability. In the light of all the circumstances in this case, the trial court was fully warranted in finding that the title to all of this property was in Irene C. McLean, and that R. D. had nothing, and actually wanted nothing, in his name.

■■ The next contention of the appellant is that he was the beneficiary of gifts from his brother. But see 24 Am. Jur., Gifts, Section 133, p. 799, where it is said in part: "It is well settled that when the claim of a gift is not asserted until after the death of the alleged donor, it must be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift." ■■ See also 38 C. J. S., Gifts, Section

65 e., where it is said that a "close relationship between the parties, such as husband and wife, parent and child, and the like, creates a presumption that a delivery or conveyance of property from one to the other, without explanatory words, was intended as a gift, but this presumption may be rebutted. Such presumption is strengthened by proof that the donor on previous occasions had made similar gifts. *Except as the statute may provide otherwise, however, the rule does not apply to transactions between brother and sister, they being regarded as strangers.*" (Emphasis supplied). See also Section 65f. thereof where it is pointed out that a presumption of invalidity on the ground of fraud or undue influence arises in case of a gift to one in a dominant position, such as a fiduciary, or one in a relation of trust and confidence. At p. 865 thereof it is also pointed out that, to overcome such burden, it must be shown that " the grantor had the benefit of competent and independent advice of some disinterested third person," and that "the burden is on the donee to prove that such advice was given."

 A gift inter vivos must be established by clear and convincing evidence. 38 C. J. S., Gifts, Section 67, p. 869. See also Section 67e., p. 888, thereof, where it is said: "The courts view with suspicion claims of gifts inter vivos first asserted after the death of the alleged donor, and require clear and convincing evidence to sustain them, some courts saying that in such a case a mere preponderance will not suffice."

In Jones v. Jones, 162 Miss. 501, 139 So. 872, it was held that the defendant, who claimed the property in question as a gift from the plaintiff, had the burden of proving that affirmative defense. See also Stewart v. First National Bank & Trust Company of Vicksburg, 192 Miss. 355, 5 So. 2d 683; Lindeman's Estate v. Herbert, 188 Miss. 842, 193 So. 790; Raley v. Shirley, 228 Miss. 631, 89 So. 2d 636.

██ ██ Assuming, but not deciding, that the evidence of William C. was admissible in that regard, it is clear, under the authorities cited above, that it was not sufficient to prove that R. D. made voluntary gifts to him.

██ ██ The final decree, dated February 12, 1957, in the first appeal, (1) adjudicated Robert D. McLean, Jr. to be the owner of, and canceled the claim of Sunflower Farm, Inc. and William C. McLean to, the lands in controversy; (2) directed the Planters Bank & Trust Company to deliver to Robert D. McLean, Jr. the escrow Funds held by it, (a) consisting of $11,949.98, being payment on A. E. Staggs, Jr. notes, and (b) the rents for the year 1956 on the lands of approximately $11,067.10; and (3) directed the defendants also to deliver to R. D. McLean, Jr. the seven uncollected notes of Fred Stagg in the amount of $800 each, and the seven uncollected notes of A. E. Staggs, Jr. in the amount of $350 each. The defendants did not comply with that decree, but appealed with supersedeas. When, on appeal here, that decree was affirmed, it was of course affirmed as of the date of its entry; and the defendants and their bond became liable for damages of 5%, as provided under Section 1971, Code of 1942, Recompiled. The exact sum of money, as well as the value of the real property, not appearing with certainty, it became the duty of the trial court, under Section 1972 of the Code, on remand, to ascertain the same. It was not conclusive that the penalty of the supersedeas bond, namely $50,000, if the court was in fact proceeding under Section 1163, Code of 1942, Recompiled, was 125% of the aggregate money judgment and value of property involved in the controversy.

██ ██ The chancellor, on the remand, undertook to fix these several values, when, at the conclusion of the second trial, in his final decree, under Section II (a) he fixed the 5% damages on the value of complainant's interest in the land at the sum of $3,000, thereby de-

termining such value to be $60,000; and under Section II (b) he fixed 5% damages of $1,150.85 on the $23,017.08, which was held in escrow at Planters Bank & Trust Company, and which amount was not delivered in accordance with the decree of February 12, 1957; and under Section II (c) he fixed $376.65 as 5% damages on $7,533.55, representing interest, rent, and note collections during the appeal because the defendants failed to comply with that part of the original decree, designated (3) supra.

Careful consideration has been given to the contention of the appellants to the effect that these allowances by the court were erroneous. The court is of the opinion however that this position is not maintainable, and that the trial court was so clearly right that no further response thereto is necessary.

■■ The court properly allowed the sum of $84.07, representing the difference between 6% and 3% interest by the bank from June 1, to November 14, 1958, on $7,533.55 in escrow. These funds were not paid over until November 14, 1958, although an order to do so was made on May 29, 1958.

■■ The general rule is that when money is deposited in court by a debtor pursuant to law, he is not liable for interest on the fund during the time it is in the custody of the court. And "Where money allegedly due and in dispute is paid to a depository, under an agrement containing no provision for interest to which the creditor assents, to await the action of a court as to the disposal of such money, interest will not accrue on such money while so deposited." 30 Am. Jur., Interest, Sections 53 and 54, pp. 45, 46.

In Aetna Insurance Company v. Natchez Hotel Company, 160 Miss. 818, 134 So. 582, the adjusted losses under the policy bore interest from the time they were due to be paid. Therefore the companies were held liable for interest from the date of the filing of the original

bill to the date when the principal was paid into court, (that is from February 6, 1929, to May 26, 1930), and thereafter from the date of the judgment until finally paid.

The appellee prosecuted a cross-appeal and assigned as error the action of the court on seven items as follows: (A) The deposit by the defendants of funds of the estate in escrow in Cleveland State Bank, "subject to settlement of income tax paid by Sunflower Farms, Inc."; (B) The allowance to William C. McLean of $1,111.04 to reimburse himself for additional income taxes, which he paid, by reason of the inclusion of trust account funds in his personal income tax return; (C) The allowance of $3,000 to William C. McLean as salary; (D) The failure to require William C. McLean to account for bonds in the amount of $3,000 held by him on September 9, 1954; (E) The allowance to Ted Borodofsky of $750, $740.98, and $778.41 as 5% commissions for renting the lands during 1955, 1956, and 1957-1958; (F) The allowance to William C. McLean of credit for travel, bookkeeping, and accounting services; and (G) The failure to allow interest on funds held in escrow from February 12, 1957, the date of the original decree, until such funds were delivered to the appellee after the decision of this Court.

As to item (A), the deposit was made on account of the collection of rents on the subject lands, interest on notes, and other moneys, and payment by the corporation of income thereon. But, the corporation wrongfully held title, and it should not be permitted to profit from its own wrong. Besides, the appellants, in their brief, say that their claim for refund has been approved. Consequently they can no longer in good faith assert any claim to these escrow funds, and the same must be paid over to the appellee.

As to item (B), the court erred in allowing this claim. Neither can William C. McLean profit from

his wrong. Since he paid the tax, it is his responsibility to seek a refund. The estate of Irene C. McLean has no right to ask for a refund on that account. If it owes any tax, presumably it will have to pay. Consequently the decree of the trial court must be reversed in that particular.

As to item (C), the services in question commenced during the latter part of 1952 and continued until the decision of this Court in March 1958. Although this was trust property, it was judiciously managed, the debts were paid, and it was a profitable operation. The chancellor allowed considerably less than the amount claimed. He found that the reduced amount was fair and reasonable, and this Court will not disturb it.

Obviously a trustee is entitled to receive compensation for such services and expenditures as are within the line of his duties. 90 C. J. S., Trusts, Section 397, p. 725; but it may be forfeited or reduced in the discretion of the court for bad faith, conversion, commingling of funds, or other improper conduct. Section 407, p. 756, et seq., thereof. At page 759 thereof, it is said: ''Each case must be determined largely on its own peculiar facts, due weight being given by the appellate court to the findings of the lower tribunal. The facts justifying forfeiture must be clearly shown; and in the absence of sufficient evidence thereof, the right to compensation is not forfeited.''

As to item (D), when the several statements of William C. McLean are considered, along with the accounting as a whole, this Court is unable to say that there was not sufficient evidence to justify the trial court in finding that these bonds were accounted for.

As to item (E), the trial court was justified in concluding that the services of this man, who was a banker, living only a few miles from the property, were advantageous and beneficial to the owner of the land. Without the selection of responsible tenants; losses could

easily occur. The chancellor evidently thought that, under all of the circumstances not necessary to be detailed here, this was a wise investment. This Court is of the opinion that this allowance was proper.

 As to item (F) it is clear that the abrogation of the trust relation was not attempted until after the death of R. D. McLean in 1954. In the meantime, much of this expense was incurred. A trustee is undoubtedly entitled to an allowance for the reasonable expenses incidental to the discharge of the trust. The chancellor, who is required to exercise supervision over such matters, was conversant with the situation, and there is no sound basis upon which it can be said that he was in error or manifestly wrong in such allowance. 90 C. J. S., supra.

 As to item (G), this must be said: The appellants were required, under the original decree of February 12, 1957, to pay over the funds theretofore put in escrow. On that account, the exemption of the escrow funds from interest no longer existed. The supersedeas bond stayed the payment, and thereby kept the appellee out of his money. Obviously the learned Chancellor was in error in failing to allow interest on such funds from February 12, 1957, until the delivery of the same to the appellee; and the decree in that particular must be reversed. Aetna Insurance Company v. Natchez Hotel Company, supra.

From which it follows that this cause, on direct appeal, must be affirmed; and on cross-appeal, the cause is affirmed in part and in part reversed and remanded to the trial court with directions.

Affirmed on direct appeal; on cross-appeal, affirmed in part and reversed in part, and remanded with instructions.

*McGehee, C. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.