GLENN *v.* MACON, et ux.

No. 42936 April 27, 1964 163 So. 2d 239

494

*Sims & Sims,* Columbus, for appellant.

*H. T. Carter, David J. Whitaker, Jr.,* Columbus, for appellees.

Kyle, P. J.

C. S. Macon and his wife, Ethel Pope Macon, appellants, filed their bill of complaint in the Chancery Court of Noxubee County against W. B. Glenn, as defendant, seeking the cancellation of a warranty deed, executed by the complainants to the defendant on January 9, 1962, conveying to the defendant approximately 110 acres of land in Noxubee County and also a certain deed of trust executed by the complainant to the defendants on January 9, 1962, to Shield Simms, Trustee,

for the use and benefit of the defendant, conveying to the trustee the above mentioned 110 acres of land and also certain personal property therein described. In their bill of complaint the complainants alleged fraud on the part of the defendant in the procurement of the above mentioned deed and mortgage deed of trust and inadequacy of consideration.

The complainants alleged in their bill that they had acquired title to the 110 acres of land by deed of conveyance from John F. Ames to the complainants dated February 27, 1942; that on February 27, 1942, the complainants borrowed from the United States of America, acting by and through the Secretary of Agriculture and pursuant to the provisions of Title I of Bankhead-Jones Farm Tenant Act, the sum of $4190 for the purpose of purchasing, fencing, clearing and improving the land, and constructing a dwelling house thereon; that the indebtedness was to be repaid in forty yearly payments of $181.26 by complainants to the Farmers Home Administration, also referred to in the record as Farm Home Security Administration; that the indebtedness was secured by a real estate mortgage deed of trust on said lands executed by the complainants as mortgagors to the United States of America, a copy of said mortgage deed of trust being attached as an exhibit to the complainants' bill. Complainants further alleged that over a period of twenty years after the execution of the deed of trust in favor of the Farmers Home Administration, due to lean crop years and other adverse conditions, the complainants became delinquent in the payment of personal property loans obtained by them from the Farmers Home Administration in the amount of approximately $2034.36; and in addition thereto, at the time of the execution of the above mentioned deed and deed of trust on the above mentioned land by the complainants to the defendant on January 9, 1962, the complainants were also in default in the payment of one

yearly installment of $181.26 on the real estate mortgages owing by the complainants to the Farmers Home Administration, and another installment of $181.26 was to become due in March 1962.

The complainants further alleged that sometime during the late fall of 1961 the Farmers Home Administration requested of the complainants that all of the delinquent installments of the indebtedness secured by the above mentioned real estate mortgage deed of trust and other indebtedness then due be paid up to date; that the complainants discussed with the defendant at that time the matter of obtaining a loan from the defendant to be secured by a second mortgage on their dwelling house and the land; that the defendant told the complainants that, if they could not get the matter satisfactorily arranged in any other way, he would make them a loan under the conditions already discussed; and that shortly thereafter the defendant directed the complainants to go to his attorney's law office in Columbus and sign the papers and he would pay the delinquent amounts due the FHA, and he would continue to let them live on the place and work the land and give them five years in which to pay the money, and he would pasture cows on some of the land. The complainants further alleged that at that time there were certain livestock, plow tools and a tractor on the land, on which the FHA had a mortgage; that the complainants discussed the matter with the agent of the FHA in Macon, and the agent advised them that when the indebtedness was paid and brought up to date the livestock cattle, tractor, and personal property would be released, and the complainants could give a first deed of trust on the personal property, and a second deed of trust on the land.

The complainants further alleged that on or about January 8 or 9, 1962, the defendant gave them $10 and instructed them to go to his lawyer's office in the City

of Columbus for the purpose of signing the papers; that complainant C. S. Macon was unable to read and could barely sign his name, and that the complainant Ethel Pope Macon had practically no education and was barely able to read; that they were accustomed to rely upon others who were better educated and more experienced in business transactions; that they had explicit faith and confidence in the defendant and believed that he was acting in good faith and that he would not misrepresent anything to them, and they agreed to sign the papers prepared by his attorney; that when they arrived at the attorney's office on January 9, 1962, they were assured by the defendant that the papers were in accordance with their agreement, that is, that they were giving a first mortgage on the livestock and implements for a furnish for the year 1962, and a second mortgage on the land and buildings to secure the defendant for payment of the delinquent indebtedness due the FHA, and acting upon the defendant's assurance and advice and the confidence reposed in him they executed what was represented to them as a trust deed to secure an indebtedness of $2215.56, with interest at the rate of six percent per annum, and to become due one year from the date thereof; that the complainants had the defendant's verbal assurance before and after the execution of the above mentioned instrument that they would have five years from the date thereof in which to repay to the defendant the money he had expended in paying the FHA its money; that at no time did they have the advice of any other person wholly disconnected with the transaction.

The complainants further alleged that on January 9, 1962, at the time of the signing of the above mentioned instruments in the office of the defendant's lawyer, the real and personal property combined and owned by the complainants was worth $7500 to $8000, and that the total amount of the money paid out by the defendant

was $4899.75; that the complainants went about their business of farming and making a crop, laboring under the impression that they had only signed two mortgages, a first mortgage on the personal property and a second mortgage on the real property, and it was not until the fall of the year, when they approached the defendant about paying the indebtedness and redeeming their personal property and making a payment on the real property, that they were advised that they had signed a warranty deed bearing the same date and conveying the same land to the defendant as that described in the trust deed; and the complainant C. S. Macon was advised by the defendant that he did not want to hear anything more about the indebtedness. The complainants further alleged that they were in a position to pay a substantial portion of the debt that had been paid by the defendant to the FHA; that the defendant, however, refused to accept such payment, claiming that he owned the farm. A copy of the warranty deed dated January 9, 1962, was attached as Exhibit ''C'' to the bill of complaint.

The complainants further charged on information and belief that the defendant, sometime during the latter part of September or the first part of October 1962, contacted Mr. Irby Adams, the agent for the FHA, and sought to pay off the indebtedness on the property in question, and the defendant was advised by Mr. Adams that he could not permit this to be done under the circumstances since the defendant had no deed to the property; that the defendant left the office of Mr. Adams in Macon, Mississippi, and returned to Columbus, where he picked up the deed in question and immediately carried it to the Chancery Clerk's office in Macon and had it recorded; that the defendant then took the deed back to Mr. Adams' office and stated to him that he had a deed; and the defendant exhibited the deed to Mr. Adams, so that Mr. Adams would permit him to pay the remainder of the indebtedness owing to the FHA.

The complainants further alleged that the defendant was a man well versed in business affairs and far better educated than the complainants; that the trust and confidence they reposed in the defendant had been misused and abused in a scheme to cheat and defraud them out of their real and personal property; that the deed of trust given on the property on January 9, 1962, in the amount of $2215.52 was not due until one year from the date of the instrument, and had not been foreclosed; that the trust deed held by the Farmers Home Administration and transferred to the defendant had never been foreclosed; and that the purported deed dated January 9, 1962, was never consciously executed and delivered by the complainants to the defendant as contemplated by law, and was therefore of no legal effect and conveyed to the defendant no title to the land; that the consideration received by them for the warranty deed was so unfair, inadequate, and unjust as to shock the conscience of a court of equity; that the complainant at no time had ever agreed to sell their property to the defendant; that the purported warranty deed was acquired by the fraudulent means outlined above and was therefore void.

The complainants further alleged that the defendant had taken into his possession and under his control all of the cattle, livestock, plow tools and other personal property belonging to the complainants, and it was necessary that an accounting be had between the complainants and the defendant to ascertain exactly the amount of the personal property held by the defendant; that it was also necessary for an accounting to be had between the complainants and the defendant as to the furnish for the year 1962, since the defendant had never rendered to the complainant an itemized statement of the furnish account.

The relief prayed for in the complainants' bill was as follows.

1. That the court enter a decree cancelling the purported warranty deed from the complainants to the defendant on January 9, 1962.

2. That the defendant be required to render to the complainants an itemized statement of complainants' account for crop loans for the year 1962, and also for the cattle taken by the defendant into his possession and held or disposed of by him; that the defendant be required to restore to the complainants all personal property belonging to them or the value thereof.

3. That the court enter a decree making such adjustments in the indebtedness owing by the complainants to the defendant, if any such adjustments needed to be made as the evidence showed should be made.

4. That the defendant be enjoined from interfering with the complainants in the peaceful possession of their land and personal property; and

5. For such general and special relief as may be mete and proper in equity.

In his answer the defendant W. B. Glenn admitted that the complainants had obtained a loan from the FHA in the amount of $4190 and had executed a deed of trust on the 110 acres of land to secure the payment of the loan, which was to be paid in 40 yearly payments of $181.26, and that the complainants owed the FHA a sum much larger than the amount originally borrowed. The defendant admitted that the FHA, during the fall of 1961, had requested payment of all of the delinquent payments and other indebtedness due at that time amounting to approximately $2400; and that the FHA was threatening to foreclose the mortgage on the land and personal property unless such payments were made. The defendant admitted that the complainants discussed their financial situation with him, and that he advised them to go ahead and see if they could make some arrangement to protect what equity they might have in the personal property and the land.

The defendant in his answer then stated that some time later the complainants advised him that they were unable to secure a loan on the personal property or the real estate, and the complainants requested him to pay off the indebtedness and take the property rather than permit the government to take it. The defendant further stated that, having known the complainants for many years and believing that they were honest and hardworking colored people, he discussed the matter with them thoroughly and had a thorough understanding with them that he would pay off the personal loan and also pay the mortgage on the real estate and would give the complainants a five-year lease on the cotton acreage and the use of the home, together with the use, without any expense, of the tractor to cultivate the land which they desired to cultivate; that after he had discussed the matter fully with them the complainants were highly pleased and were willing and ready to carry out the agreement by executing a bill of sale to the personal property and a warranty deed to the real estate, with the understanding that they were to remain on the property for a period of five years rent free and that they were to have the use of the tractor for the five-year period, and that the defendant should have the use of a portion of the land for pasture. The defendant further stated in his answer that he agreed to pay the complainant C. S. Macon for day labor performed by him during the fall, winter and spring months in cleaning up, fencing and improving the farm. The defendant further stated that shortly after the above mentioned agreement was entered into he advised the complainants to appear at the law office of Sims & Sims, in Columbus, Mississippi; that the papers were prepared according to the above mentioned agreement; that the complainants did appear and the matter was again thoroughly discussed, and the complainants fully understood the contents of the instruments which they executed.

In answer to the allegation contained in the complainants' bill concerning the complainants illiteracy, the defendant alleged that the complainant, C. S. Macon, had been transacting business for many years; that the complainant had a general knowledge of business transactions although he may not have had much formal education. The defendant admitted that the complainants had explicit faith and confidence in him, and that he had always had the same feeling of confidence in them, "until this transaction which they have attempted to repudiate through the influence of someone else." The defendant stated that for many years and at various times he had been on the property of the complainants and had advised with them on numerous occasions and at various and sundry times had made loans to them without any security whatsoever; that he had the utmost confidence in them and was trying to aid and assist them when the above mentioned agreement was made. The defendant stated that at no time during the conversations which he had with the complainants had he made any effort or had any intention to use any unlawful means to obtain the property, as charged in the complainants' bill; that he had done everything in his power to be fair, honest and equitable with the complainants. The defendant admitted that the property involved was worth approximately $7500. The defendant stated that he had paid out more than $5000 in cash, and had given the complainants possession of the property, together with the use of the tractor, for a period of five years without rent; that the rent on the property would be worth at least $500 per year. The defendant, therefore, felt that he had paid to the complainants as much as $7500, which was done for the sole purpose of trying to provide a place for them to live and to realize some of the equities out of the property. The defendant admitted that after the papers were executed in the office of Sims & Sims,

attorneys, the complainants went about their business of farming and made a splendid crop, but denied that they knew or thought they had a right to redeem their property.

The defendant admitted that he contacted Mr. Adams, the agent for the FHA, in the fall of 1962, in reference to paying off the indebtedness secured by the FHA mortgage deed of trust; that he had sought to pay off the indebtedness at that time, and was advised by Mr. Adams that he could not permit him to do that because of the fact that he had no deed to the property; that he explained to Mr. Adams that he did have a deed to the property, which had not been recorded; and he then presented the deed to Mr. Adams, who after consulting his attorney was advised that the defendant was entitled to pay off the loan. The defendant stated that he did not record the deed which he had obtained in January 1962 until the fall of the year for the reason that, if he had recorded the deed, the full amount of the indebtedness owing to the FHA would have had to be paid, and he was unable to pay the same at that time.

The defendant denied that he had deliberately schemed or designed to take the complainants' land by unfair methods.

The defendant denied "that complainants at no time ever agreed to sell their property to him", and the defendant denied "that said purported deed was never consciously executed and delivered by the complainants," and was therefore of no legal effect. The defendant denied that the consideration for the warranty deed was inadequate and unjust. He denied that the warranty deed was obtained by fraudulent methods.

The defendant admitted that he had given notice to the complainants to vacate the premises when he was advised that a lawsuit was to be filed and that he would be charged with fraud. The defendant admitted that he had taken possession of and had under his control

all of the cattle, livestock, plowtools, tractors, planters, etc., but denied that an accounting was necessary for the reason that the personal property was sold to him directly for a lump sum, as evidenced by the bill of sale executed on January 9, 1962. The defendant stated that the complainants had repaid to him the amount of money furnished by him during the year 1962 for the purchase of supplies in making a crop.

The cause was heard at the February 1963 term of the court.

The testimony offered on behalf of the respective parties consisted mainly of the testimony of the interested parties themselves. The testimony of the complainants concerning the conversation which they had with the defendant leading up to the agreement whereby the defendant was to furnish the money for the payment of the indebtedness which the complainants owed to FHA, and the facts and circumstances surrounding the execution of the several instruments which they signed on January 9, 1952, and their understanding of the instruments, followed closely the allegations of their bill of complaint. The testimony of the defendant followed closely the averments and denials contained in his answer. It would serve no useful purpose to discuss the evidence in detail.

At the conclusion of the evidence the complainants' attorneys moved that the complainants be permitted to amend their bill of complaint so as to charge that prior to, at the time of and subsequent to the 9th day of January 1962, the date on which the above mentioned deed and deed of trust were executed, there existed between the complainants and the defendant a fiduciary relationship, in addition to the other allegations contained in the original bill of complaint; also that the complainants be permitted to amend the prayer of the bill so as to pray in the alternative that the deed in question be declared to be a trust deed instead of a deed

to the property in question, and, in the alternative, that the court declare a resulting trust in favor of the complainants so as to conform with the proof.

The complainants also renewed at the conclusion of the evidence a tender of payment of the amount of money found to be due the defendant, which had been made at the beginning of the hearing.

The court sustained the complainants' motion for permission to amend the bill of complaint in the manner stated above.

The chancellor found that the complainants acquired their title to the 110 acres of land referred to in the bill of complaint from J. F. Ames by deed dated February 27, 1942, at which time they secured a loan from the United States of America in the principal sum of $4190, as evidenced by a mortgage dated February 27, 1942, and that the complainants thereafter lived on the land and continued to work it, and that during the year 1962 there was a balance due on the indebtedness owing to the United States of America in excess of $3,000, which was paid by the defendant W. B. Glenn.

The chancellor found that sometime before January 9, 1962, the complainant C. S. Macon approached the defendant for assistance in paying off a part of the debt that was in arrears to the Farmers Home Administration, which included one payment of $181.26 then in arrears on the original mortgage which had been executed by the complainants in 1942, and an unpaid balance of approximately $2154.82 evidenced by past due promissory notes secured by a chattel deed of trust on the complainants' cattle, tractor and other farm equipment dated January 31, 1961; and that after some conversation between the parties, as to which there was a hopeless conflict in the testimony, the complainant and his wife, on January 9, 1962, appeared in the office of the defendant's attorney in Columbus, Mississippi, and there signed a second mortgage deed of trust on the

110 acres of land and the personal property owned by the complainants; and also an agreement to execute a warranty deed, which agreement provided that they would execute and deliver a warranty deed on their real estate in Noxubee County, ''said warranty deed to be recorded when the balance due on the Farmers Home Administration loan has been paid in full;'' and that on the same date the complainants also signed a warranty deed conveying to the defendant the 110 acres of land in question, and a bill of sale conveying to the defendant the farm tractor and other equipment and several head of cattle described therein.

The chancellor found that the defendant was a building contractor residing in Lowndes County, and that he owned land in Noxubee County situated near the farm of the complainants; that the defendant had been acquainted with the complainants for a period of approximately 15 years; that he had visited the farm of the complainants; that he had advised with them from time to time about various matters, and had made loans to them without any security whatsoever, and that the defendant in his answer admitted that this relationship had existed between the parties. The chancellor found that the complainant C. S. Macon was 52 years of age and unable to read and write, with the exception of being able to print his name; that his wife was 57 years of age and could read and write, having finished, according to her testimony, the second grade in school; that both of the complainants were obviously illiterate and not very well versed in business transactions.

It was the opinion of the chancellor that, considering the illiteracy of the complainants and the relation that existed between the complainants and the defendant, a fiduciary relationship, as defined by this Court in numerous decisions, existed between the complainants and the defendant; that the defendant represented the dominant spirit in that relationship; and that under the

admissions of the bill and under the testimony this cause fell in that classification.

The chancellor found that the complainant had tendered the sum of $2034.63, plus six percent interest from January 8, 1962, which represented the money that was paid by the defendant to satisfy the chattel deed of trust executed by the complainants on January 31, 1961, to secure the payment of an indebtedness of $2154.82 owed by the complainants to FHA; that the defendant had also paid to FHA on January 8, 1962, $181.26, which was the annual payment due for the year 1961 on the mortgage executed by the complainants to FHA in 1942. The chancellor also found that the complainants had tendered an additional sum of $181.26 which represented an installment due under the land mortgage on March 26, 1962, and had also tendered the sum of $2684.25 which was paid on October 2, 1962, to the United States Government to satisfy the balance due on the land mortgage; that the defendant had paid the sum of $5081.40 to satisfy the various mortgages executed by the complainant.

The chancellor found that the value of the land, as shown by the testimony of the witness W. H. McCaskill, who had managed a farm in the Bigbee Valley vicinity for about 45 years and was familiar with the 110-acre tract owned by the complainants, was $80 per acre, which made the land worth $8800; that the value of the personal property, as testified by the defendant W. B. Glenn, was $800; that the total value of the property involved was $9600, for which the defendant had paid $5081.40.

It was the opinion of the chancellor, and the court so held, that the deed of conveyance of the 110 acres of land executed by the complainants on January 9, 1962, and the mortgage deed of trust and the bill of sale of the personal property should be cancelled; that the complainants should be required to pay to the defendant

within fifteen days the above stated sum of $5081.40 plus accrued interest, in accordance with the tender made by the complainants at the beginning of the hearing; and that if the complainants should fail to pay that amount within fifteen days a special commissioner should be appointed to sell the property and make proper application of the proceeds of the sale.

The chancellor found that the testimony as to the facts and circumstances surrounding the execution of the various instruments was in hopeless conflict, and that the complainants had not met the burden of proof required by law to establish active fraud in the execution of said instruments. But the chancellor found that the answer filed by the defendant and the defendant's own testimony showed that a fiduciary relation existed between the complainants and the defendant prior to, at the time of and subsequent to the execution of the above mentioned deed of conveyance, bill of sale, trust deed and other papers; that the defendant represented the dominant spirit in that relationship; that under such circumstances there was a legal presumption that the instruments were obtained by undue influence, and the defendant had failed to rebut or overcome that presumption.

The chancellor found that the defendant had received approximately 650 bales of hay from the land, that he had sold two calves for about $75 or $80 each, and that he had collected $35 on an insurance claim for damages to the property on the farm; but there was nothing in the record to show the amount of money he had paid for taxes for the year 1962, or for repairs on the tractor; and after taking all of these items into consideration the chancellor declined to surcharge the defendant for the two head of cattle which he had sold or the $35 insurance money which he had collected, or the hay that he had harvested off of the place.

The final decree was entered on February 22, 1963, and in that decree the chancellor set forth in detail the material findings announced in the above mentioned opinion, including his finding that a fiduciary relation existed between the complainants and the defendant prior to, at the time of and subsequent to the execution of the above mentioned deed, mortgage deed of trust, and other instruments dated January 9, 1962, and that the defendant had failed to rebut or overcome the presumption of undue influence arising out of that relation; and the chancellor held that the instruments were void for that reason and also other reasons.

The chancellor also found, as stated above, that the complainants at the conclusion of all the testimony had moved the court for permission to amend their bill of complaint so as to conform to the proof and pleadings, and so as to charge that a fiduciary relation existed between the defendant and the complainants prior to, at the time of and subsequent to the execution of the instruments dated January 9, 1962, and also to amend the prayer so as to pray for other relief than that already mentioned in the original bill.

It was therefore ordered that the bill of complaint and prayer for relief be amended in the manner stated in the complainants' motion for permission to amend.

It was further ordered, adjudged and decreed: (1) That the deed and bill of sale executed on January 9, 1962, wherein the complainants conveyed to the defendant the 110 acres of land involved in the lawsuit and the personal property, as described in the decree, be cancelled and held for naught; (2) that the deed of trust executed by the complainants on January 9, 1962, for the use and benefit of W. B. Glenn, conveying the above mentioned 110 acres of land and also the personal property therein described be cancelled and held for naught; (3) that the defendant restore to the complainants at once all livestock owned by the com-

plainants and the tractor and implements used in connection with the operation thereof and more particularly described in the above mentioned bill of sale; and (4) that the defendant forthwith remove from the complainants' premises all hay owned by the defendant and stored in the complainants' barn, and that the defendant also forthwith remove from the complainants' premises any and all other livestock owned by him.

It was further ordered that the complainants pay to the defendant within fifteen days from the date of the decree the sum of $5,284.37, which sum of money the court found was the actual amount expended by the defendant for the benefit of the complainants plus six percent interest per annum; and that, if the complainants failed to pay said sum of money to the defendant within said period of time, the chancery clerk, acting under his official bond, should sell said property according to law and out of the proceeds of said sale pay over to the defendant the said sum of $5,284.37, and the remainder, if any, should be paid over to the complainants. The defendant was taxed with all costs of the proceeding.

From that decree the defendant has prosecuted this appeal.

The appellant has assigned and argued two points as ground for reversal of the decree of the lower court; (1) That the trial court erred in allowing the appellees to amend their bill of complaint at the conclusion of all of the testimony, so as to charge that prior to, at the time of and subsequent to the date of the execution of the above mentioned deed and deed of trust, there existed between the complainant and the defendant a fiduciary relationship, in addition to the other allegations contained in the original bill of complaint; and (2) that the court erred in finding that there was a fiduciary relationship between the appellant and the appellees.

We think there was no error in the chancellor's action in allowing the complainants to amend their bill of complaint in the manner specified in their motion to amend. The amendment in our opinion effected no substantial change in the character of the pleadings. The complainants had already alleged in their original bill that a relationship of trust and confidence did in fact exist between the complainants and the defendant, and the defendant, as the chancellor stated, admitted in his answer that such relationship existed.

Section 1302, Miss. Code of 1942, expressly provides that amendments shall be allowed in the pleadings and proceedings on liberal terms, to prevent delay and injustice.

In discussing the rule relating to amending bills in equity to conform to the proof, the textwriter in 30 C.J.S., 817, Equity, § 402, says: "Where it appears clearly from the evidence that plaintiff has a case which entitles him to relief, but which by reason of some defect or omission in the charges or allegations of the bill is not brought fairly within the issue, he may be permitted by amendment to adapt the charges or allegations of the bill to the case as proved, * * *."

Judge Griffith, in his Mississippi Chancery Practice, Sec. Ed. 1950, § 396, says: "* * * But an amendment so as to conform the pleadings to the evidence should be allowed even at the argument, if the variance be then for the first time discovered, there being no inexcusable negligence and the amendment does not change the substantial nature of the case; and, where both parties have tried the case on the theory and supposition that the pleadings stated the issue as tried, and it is clear that no surprise or injustice would result it is proper even after decision to allow amendments to conform to the case so tried."

In McGuire v. Busby (1956), 229 Miss. 518, 91 So. 2d 284, the Court held that in a suit for partition sale

of a house and lot, the chancery court should have permitted the complainants to amend the bill near the conclusion of the trial so as to embrace a more full and complete description of the land, and should not have dismissed the bill without prejudice, thus causing a further delay of the case and a possible injustice. See also Russell v. Denson (1911), 98 Miss. 859, 54 So. 439.

We also think that it cannot be said that the chancellor erred in his finding that a fiduciary relation between the appellant and the appellees existed as a fact before and at the time of the execution of the deed of conveyance and the mortgage deed of trust and other instruments executed by the appellees on January 9, 1962.

There was no substantial dispute as to the facts upon which the chancellor based his finding that the relation between the complainants and the defendants was a fiduciary relation, and that the defendant represented the dominant spirit in that relationship; and the main question presented for our decision on this appeal is whether or not those facts were sufficient in law to support the finding of the chancellor that a fiduciary relation between the parties existed as a fact.

In discussing the doctrine of fiduciary relation, as applied in cases of this kind, and the jurisdiction exercised by courts of equity over the dealings of persons standing in certain fiduciary relations, Mr. Pomeroy in his Equity Jurisprudence, Vol. 3, Fifth Ed. p. 792, § 956, says: "* * * The jurisdiction exercised by courts of equity over the dealings of persons standing in certain fiduciary relations has always been regarded as one of a most salutary description. The principles applicable to the more familiar relations of this character have been long settled by many well-known decisions, but the courts have always been careful not to fetter this useful jurisdiction by defining the exact limits of its exercise * * *."

In discussing the type of cases to which the principle extends, the same textwriter in § 956a, says: "Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal. (If a relation of trust and confidence exists between the parties — that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused — that is sufficient as a predicate for relief. The origin of the confidence is immaterial.)". See also cases cited.

In Ham v. Ham (1926), 146 Miss. 161, 110 So. 583, this Court held that the burden of overcoming the presumption of invalidity of a deed between parties to a fiduciary relation is on the party claiming under it, and that the presumption of its invalidity can only be overcome, if at all, by clear evidence of good faith on the part of the grantee and of full knowledge and of independent consent and action on the part of the grantor.

 ██ ██ We have carefully reviewed the testimony in the record, and we think the evidence was sufficient to support the chancellor's finding that a fiduciary relation existed between the complainants and the defendant at the time the above mentioned deed was executed, and that the defendant was the dominant spirit in that relationship. Whether the defendant in this case acted in good faith in the transaction complained of, and whether the complainants executed the deed and other instruments with full knowledge of their contents and

of their own independent consent and action, were questions of fact for the chancellor to decide. The testimony shows that the complainants were practically illiterate, that they trusted the defendant, and that they appealed to him for advice and help in a time of need to avoid a threatened foreclosure of the mortgages on their property. The complainants testified that they never intended or agreed to sell their property to the defendant; that it was their understanding that they were to give the defendant a second mortgage on the land and a first mortgage on the cattle, tractor and other farm equipment, and they were to have five years within which to pay the money back to the defendant; that no one ever explained to them that they were signing a deed conveying their interest in the land to the defendant. As we have seen above the chancellor found that the fair market value of the complainants' property was much greater than the amount of the indebtedness which the defendant paid to the FHA. We think that it cannot be said that the chancellor was manifestly wrong in his finding that the defendant had failed to overcome the presumption of invalidity in this case.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Gillespie, McElroy, Rodgers and Brady, JJ.,* concur.